GEORGE SMITH and Another v. INDEPENDENT SCHOOL DISTRICT NO. 12, ST. LOUIS COUNTY.[1]

July 2, 1909.

Nos. 16,121—(166).

**Recovery of Bidder's Deposit — Failure to Contract.**

A school district, proposing to erect a schoolhouse, advertised for bids. Certain contractors submitted a bid. The board voted that they be awarded the contract. The architect drafted a proposed contract, based upon the specifications which had been used by the contractors in making their bid, which was exhibited, but not delivered, to the contractors. The attorney for the school board thereafter drafted a new contract, which contained matters not included in the specifications upon which the bid was made. After various negotiations with reference to the form and substance of the contract, the parties being unable to agree, the board let the contract to another bidder. The contractors then brought an action to recover the money which they had deposited at the time of the making of the bid as required by the advertisement. The school board claimed that the money had been forfeited, and sought to recover damages for the refusal of the contractors

1Reported in 122 N. W. 173.

to carry out the contract. *Held,* that no contract had been entered into, and that the trial court properly directed a verdict in favor of the plaintiffs.

Action in the district court for St. Louis county to recover $900 deposited with defendant by the plaintiffs. The defendant interposed a counterclaim for $250 special damages, and $2,165 general damages, for plaintiffs' failure to perform their contract. The case was tried before Ensign, J., who directed a verdict in favor of plaintiffs in the sum of $924. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, it appealed. Affirmed.

*W. G. Bonham,* for appellant.

*Jaques & Hudson,* for respondents.

ELLIOTT, J.

The plaintiffs sought to recover the sum of $900 in an action for money had and received. At the close of the evidence the court directed a verdict in favor of the plaintiffs, and the defendant appealed from an order denying its motion for judgment notwithstanding the verdict or for a new trial.

The primary question involved is whether or not a contract was entered into between the parties. If no contract was made, the court properly directed a verdict in favor of the plaintiffs. We think the court was right.

On February 5, 1908, the appellant advertised for bids for the construction of a proposed schoolhouse. This advertisement was to the following effect:

"The undersigned hereby gives notice that sealed proposals for the erection of grade school building at Ely, Minn., including all labor and material, will be received by Henry Chinn, clerk, until the hour of 2 p. m. on the twenty-fourth day of February, 1908.

"All bids must be in strict accordance with plans and specifications prepared by F. L. Young & Co., 201 Palladio Building, of Duluth, Minn., which may be seen at the office of the architect on and after February 7, 1908, and may also be seen on application to Builders' Exchanges of Duluth, St. Paul, and Minneapolis, and office of school board, Ely, Minn.

"Excavations and concrete work for footings must be bid on separate from general contract.

"A certified check for 2 per cent. of bid, payable to the order of M. E. Gleason, treasurer, must accompany each bid as a guaranty, the same to be returned to unsuccessful bidders immediately on letting the contract. The party to whom the contract is awarded will be required to give satisfactory bond in the sum of the contract price for the faithful performance of the contract. The right is reserved to reject any or all bids."

The respondents, Smith & Vokes, saw this notice and called upon the architect referred to therein to see the plans and specifications of the building, in order to figure upon its construction. The architect produced the plans and specifications and delivered them to the plaintiffs. Upon the basis of these specifications, Smith & Vokes submitted a bid and deposited therewith the sum of $900, as required by the advertisement. On February 24, 1908, the school board considered the bids, and its records show the following proceedings:

"Ely, Minn., 2-24-08. A meeting of the school board of District 12 was held in the office at the high school building for the purpose of canvassing proposals for the erection of the new school building. * * * The following proposals were canvassed: * * * Smith & Vokes, $39,435. * * * All proposals excepting Smith & Vokes and C. E. Wierschke were dispensed with. These two bidders were asked to submit reductions from their bid for certain portions of the material specified which the board may decide to dispense with. Submitted as follows: Smith & Vokes, $2,075; C. E. Wierschke, $1,887. Motion supported and carried that, Smith & Vokes being the lowest bidder, they be awarded the contract. Meeting adjourned."

On the same day F. L. Young, the architect, prepared a rough draft of a building contract upon an architect's form ordinarily used for such purposes, and submitted it to Smith, who then stated that he desired to submit it to his attorney before signing it. This form of contract provided that the work covered by the contract should be done under the direction of the architect, and that his decision as to the true construction and meaning of the drawings and specifications should be final, that the architect should have the power to

condemn the materials and work done, and that the contractor should remove such materials and take down such work upon notice from the architect to that effect. The school board never completed this draft of contract, and it was never sent by them to the plaintiffs for execution, or for submission to their attorney. The specifications which were submitted to Smith & Vokes by the architect, Young, are referred to in the record as Exhibit F. There was also introduced a set of specifications which came from the architect's office, referred to as Exhibit 10, and also another set, which was produced by the school board and is referred to as Exhibit 29. Both of the latter differ in some material respects from Exhibit F, which was the one upon which Smith & Vokes made their bid. For instance, Exhibit 10 contains a clause to the effect that "the architects and owners or their authorized representative may by written notice require the contractor to dismiss forthwith any workman they may deem careless or incompetent." There is also a provision that "no contractor is to sublet the whole or any part of his contract without the consent of the architects and school board." Exhibit 10 provides that there "will be blinds in all windows except those in boiler and coal rooms, the windows below the ceiling of the side porch and the three small ones directly over the front entrance. They are to be of Bustwick and Goodell mfg., or their equal. The slats are to be 2⅜ inches, of bass or white wood in natural finish. The cord is to be good, and the tape of the best linen." This provision is also found in Exhibit 29, but not in Exhibit F.

After the draft of a contract had been prepared by Mr. Young, there was some delay, and on March 11, J. W. Osborn, who was acting as the attorney for the school board, mailed to Smith & Vokes a draft of a proposed contract which differed materially from the one drawn by the architect on February 24. This proposed contract provided that the contractors were to construct the school building under the supervision and to the satisfaction of the owner and architects, and that no alteration should be made in the work except upon the written order of the architects "and owner," and that the architects "and owner" might condemn material and work done which might be deemed by the architects "and owner" as insufficient or

improper or in any way failing to conform to the drawing and specifications. Upon receiving this proposed contract, Smith & Vokes drafted a form of contract which provided that the building should be constructed under the supervision of the architect, and that any alterations in the work should be upon the order of the architect, and that the power to condemn work and material is to be in the architect, and not in the architect and the owner.

It is not necessary to refer in detail to the various drafts of proposed contracts, as it is clear that the minds of the parties did not meet and that no contract was ever agreed upon. Smith & Vokes never refused to enter into the contract drawn by the architect on February 24; but it appears that they were at all times willing to execute such a contract, and in fact were willing, as a compromise measure, to enter into the contract, Exhibit 28, which contained some modifications thereof. On April 11, 1908, the school board abandoned all pretense of awarding the contract to build the schoolhouse to Smith & Vokes, and advertised for new proposals for the construction of the building. On April 22, 1908, the board entered into a contract with C. E. Wierschke for the construction of the building.

The appellant's claim is that the contract was completed by the action of the board on February 24, 1908, and that by the refusal of Smith & Vokes to proceed according to the understanding of the board and its representatives, and execute a written contract in accordance with their views, the $900 which had been deposited was forfeited, and that Smith & Vokes became responsible to the school board for damages resulting to the district. It is not necessary to consider the various legal propositions raised by the appellant, because we are clear that no contract was made.

The order of the trial court is therefore affirmed.